Raymond L. BURNETT,
Plaintiff-Appellant,

v.

William E. BROCK, Secretary of the
U.S. Department of Labor,
Defendant-Appellee.

No. 86–8310.

United States Court of Appeals
Eleventh Circuit.

Dec. 17, 1986.

A. Lee Parks, Jr., Atlanta, Ga., for plaintiff-appellant.

Stephen S. Cowen, U.S. Atty., Robert Tayloe Ross, Atlanta, Ga., Diane Arlene Heim, U.S. Dept. of Labor, Washington, D.C., for defendant-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and EATON *, Senior District Judge.

PER CURIAM:

Appellant, Raymond L. Burnett, appeals the district court's order granting summary judgment in favor of appellee, Atlanta

---

* Honorable Joe Eaton, Senior District Judge for the Southern District of Florida, sitting by desig-

nation.

Newspapers, Inc. (Atlanta Newspaper) on the grounds that the Office of Federal Contract Compliance Programs (OFCCP), United States Department of Labor, lacked jurisdiction to prosecute his claim of employment discrimination on the basis of handicap in violation of the Rehabilitation Act. We affirm.

## Facts and Procedural History

On May 28, 1981, Atlanta Newspaper terminated Burnett whom it had employed as a pressman for twenty years. The termination was based upon a medical diagnosis that Burnett had multiple sclerosis and his physicians' recommendation that he not work in close proximity to machinery or climb heights. On June 25, 1981, Burnett filed a complaint with the local office of the OFCCP, charging Atlanta Newspaper with employment discrimination on the basis of handicap in violation of section 503 of the Rehabilitation Act (the Act).[1] Upon investigation, the OFCCP determined that it was without jurisdiction to consider Burnett's claim because Atlanta Newspaper had no government contracts in effect on May 28, 1981; thus, it was not subject to the Act. Burnett's lawyer then informed the OFCCP that Atlanta Newspaper may have had contracts with the U.S. Air Force Reserve to publish advertisements on May 28, 1981. Upon further investigation, the OFCCP found three separate purchase orders for advertisements from the Hameroff/Milenthal Advertising Agency placed on behalf of the U.S. Air Force Reserve. The first order, totaling approximately $5,000, was for advertisements to appear from December 6, 1980, through January 31, 1981. The second order, totaling approximately $2,300, was for advertisements to appear for February 19, 1981, through March 19,

1981. The third order, totaling approximately $4,600, was for advertisements to appear from June 6, 1981, through July 18, 1981.

Although the purchase orders did not cover May 28, 1981, the date of Burnett's termination, the OFCCP made a preliminary finding of a violation. This finding led to conciliation negotiations which resulted in Atlanta Newspaper offering Burnett three jobs and back pay. Burnett rejected all of these offers, and the matter was referred for review to the OFCCP's national headquarters in Washington, with a recommendation that enforcement proceedings be initiated. The national headquarters office determined that Atlanta Newspaper was not a government contractor at the time of Burnett's termination and directed that the local office make a final effort to resolve the case, and if no resolution could be achieved, to close the case for lack of jurisdiction. On May 29, 1984, Burnett was informed that his complaint had been closed because of lack of jurisdiction.

On March 6, 1985, Burnett brought this lawsuit in district court seeking judicial review of the Department of Labor's decision and seeking an order compelling the Department of Labor to pursue his claim. On March 31, 1986, the district court granted the Department of Labor's motion for summary judgment.

## Discussion

The language of section 503 of the Rehabilitation Act is unambiguous. The statute is applicable only if a company has in existence a government contract or subcontract valued in excess of $2,500. The Act further mandates affirmative action (and nondiscrimination) by the employer only with

1. Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793(a), provides:

Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment quali-

fied handicapped individuals as defined in section 706(6) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

respect to "employing persons to carry out such contract." 29 U.S.C. § 793(a). Accordingly, OFCCP has jurisdiction to investigate a complaint only if the employer has a government contract or subcontract in the requisite amount in effect at the time of the alleged discrimination.

Burnett relies on the advertisements placed by the United States Air Force Reserve through Hameroff/Milenthal Company, Inc. to establish that Atlanta Newspaper was on May 28, 1981, a government contractor within the meaning of the Rehabilitation Act. The district court, in granting summary judgment, found that because none of the Air Force Reserve's advertisements included May 28, 1981, and because no master contract or subcontract existed between the government and Atlanta Newspaper, Atlanta Newspaper was not a government contractor within the meaning of the Act at the time of Burnett's termination.

Burnett contends that the three orders for advertisements were not separate contracts, but were part of an ongoing business relationship between the United States Air Force Reserve and Atlanta Newspaper. Burnett argues that it is proper to aggregate the three orders and find that Atlanta Newspaper was a government contractor from the time of the running of the first advertisement until the running of the last advertisement. Title 41 C.F.R. § 60–741.3(a)(2) provides the basis for aggregation under section 503. That section provides:

> (2) *Contracts and subcontracts for indefinite quantities.* With respect to indefinite delivery-type contracts and subcontracts (including, but not limited to, open end contracts, requirement-type contracts, Federal Supply Schedule contracts, "call-type" contracts, and purchase notice agreements), the affirmative action clause shall be included unless the contracting agency has reason to believe that the amount to be ordered in any year under such contract will be less than $2,500. The applicability of the affirmative action clause shall be determined at the time of award for the first year, and

annually thereafter for succeeding years, if any. Notwithstanding the above, the affirmative action clause shall be applied to such contract whenever the amount of a single order is $2,500 or more. Once the affirmative action clause is determined to be applicable, the contract shall continue to be subject to such clause for its duration, regardless of the amounts ordered, or reasonably expected to be ordered in any year.

■ Cases cited by Burnett in support of his argument that the contracts between the agency and Atlanta Newspaper should be aggregated are inapposite because they involve situations in which a general or master contract existed. The district court correctly noted that in determining the existence of a master contract, the correct focus is upon an agreement between the government and Atlanta Newspaper, and any arrangement between the government and the advertising agency is irrelevant. Burnett has also failed to present evidence of a master subcontract between the advertising agency and Atlanta Newspaper. Atlanta Newspaper's uncontested evidence showed that no contract bound the advertising agency to place a certain number of advertisements during the year, or any obligation on the part of Atlanta Newspaper to place each request. Each purchase order provided for a separate contractual agreement and was not part of a master subcontract.

■ Burnett further contends that an insertion order entered by the advertising agency on May 26, 1981, two days before Burnett was terminated, constituted a subcontract under section 503 of the Act. The district court correctly determined, however, that the insertion order was merely an offer which Atlanta Newspaper did not accept until it published the ad on the first requested date of June 6, 1981. The price quotations circulated by Atlanta Newspaper in response to which the agency submitted its May 26 insertion order constituted an invitation to enter into negotiations—not an offer. Atlanta Newspaper's policies included reserving its right to refuse to

publish an advertisement for any reason and a customer's right to withdraw or cancel, without paying a fee, an advertisement at any time prior to the deadline for the edition in which it was to be published. Thus, the agency's submission on May 26 constituted an offer rather than an acceptance. Whether the quotation of a price is an offer or merely a proposal to enter into negotiations depends upon the intention of the person making the communication as is manifested by the facts and circumstances of each particular case. 17 Am.Jur.2d *Contracts* § 33. Thus, we conclude that a contract did not exist with respect to the May 26, 1981, insertion order at the time of Burnett's termination.[2]

We also find Burnett's further contention that Atlanta Newspaper's failure to accommodate Burnett's previous handicap during negotiations after termination constituted a separate and distinct violation of the Act meritless. No issues of material fact precluded summary judgment. Accordingly, we affirm.

**AFFIRMED**

2. The final paragraph of the district court's order stated that no contract was "being performed at the time of [Burnett's] termination." A reading of the entire order suggests that the court focused upon the existence of a contract, thus we assume the district court meant that no contract was in existence at the time of Burnett's termination.